1
2
3
4
5
6
7

8     **UNITED STATES DISTRICT COURT**

9     **SOUTHERN DISTRICT OF CALIFORNIA**

10

11    REZA JAFARI and FIRST AMERICAN            CASE NO. 12cv2982-LAB (RBB)
      TITLE INSURANCE COMPANY

12                                              **ORDER DENYING FDIC'S**
                              Plaintiffs,       **MOTION TO DISMISS**

13          vs.

14
      FEDERAL DEPOSIT INSURANCE
15    CORPORATION, as Receiver for
      La Jolla Bank; et al.,

16
                              Defendant.

17

18

19          The Court recently dismissed the FDIC's third party complaint against Heritage

20    Escrow in this case.  Still pending, however, is the FDIC's motion to dismiss the first

21    amended complaint of Jafari and First American Title Insurance Company ("FATIC").  This

22    Order rules on that motion.

23          The FDIC makes two arguments. The first is that the claims of FATIC, which was

24    added as a co-plaintiff in the first amended complaint, must be dismissed because *it* hasn't

25    gone through the FDIC's administrative claims process.  Jafari has, but FATIC has not.  The

26    second is that the equitable claims in the first amended complaint—for unjust enrichment

27    and equitable subrogation—cannot be asserted against the FDIC as a matter of law.

      //

28

                                          - 1 -                                    12cv1971

**I.       Administrative Exhaustion**

Claims against the FDIC have to be exhausted administratively before they can be brought in court.  12 U.S.C. § 1821(d)(13)(D); *Henderson v. Bank of New England*, 986 F.2d 319, 320–21 (9th Cir. 1993).  Jafari ran up against this exhaustion requirement when he first filed this case and sought a TRO to block the FDIC from selling his newly-purchased home. The Court denied his request, in part, because he had merely filed, but not exhausted, an administrative claim.  *See Jafari v. FDIC*, Case No. 12-CV-1971-LAB, Doc. No. 11 at 4–8. Now, FATIC runs up against the exhaustion requirement.

That much isn't in dispute.  The first amended complaint doesn't even allege that FATIC exhausted *its* claims.  It alleges only that "Jafari and his purchase money lender, Union Bank, filed a Proof of Claim with the FDIC, asserting claims, *inter alia*, for breach of contract, unjust enrichment and equitable subrogation."  (FAC ¶ 28.)  Obviously, FATIC is missing there, and the FDIC takes the position that this is a procedural foul.  FATIC's response to this is that it's really *the claims* that matter, and *the claims* were exhausted administratively.  They were brought in Jafari's name simply because, under Fed. R. Civ. P. 17(a)(1), he is a real party in interest.

Indeed, FATIC has been the force behind Jafari's claims from the beginning, simply because it is his title insurer.  When the FDIC refused to reconvey its deed of trust to Jafari, it was FATIC who retained counsel and filed an administrative claim with the FDIC on Jafari's behalf.  It was also FATIC who retained counsel to pursue litigation against the FDIC *in this Court*, starting when the administrative claim wasn't promptly adjudicated.  It's true that FATIC didn't actually pay off the FDIC until after the Court denied Jafari's request for a TRO, and so in some sense didn't have a claim itself when the administrative claim was filed.  But at the same time, under the terms of Jafari's title insurance policy FATIC had the right to pursue litigation in Jafari's name from the beginning, and the administrative claims it would file now (assuming they are timely) would be virtually identical to those that Jafari filed and that were fully adjudicated.  The only difference, of course, is that the administrative claim //

1  was filed *before* FATIC paid off the FDIC, so the unjust enrichment amount is now much

2  higher.[1]

3      First, some perspective.  FATIC was added as a plaintiff in this case simply out of

4  caution, because the FDIC's original answer suggested that Jafari himself might lack

5  standing. (Doc. No. 4 at ¶ 21.)  As Jafari put it in his motion to file a first amended complaint,

6  "Jafari seeks to add First American as a party plaintiff out of an abundance of caution based

7  on FDIC's apparent assertion in its Answer to Jafari's original complaint that Jafari may not

8  have standing to bring this action and/or that he would be unjustly enriched if allowed to

9  recover on the claims therein." (Doc. No. 38-1 at 1.)  More importantly, although the FDIC

10  initially refused to stipulate to Jafari filing a first amended complaint (Doc. No. 38 at 1), it

11  subsequently filed a notice of non-opposition (Doc. No. 42).  The Court wouldn't go so far

12  as to say that the FDIC waived any exhaustion argument as against FATIC by stipulating to

13  its addition as a plaintiff in this case, but there's certainly some tension between the FDIC

14  agreeing to FATIC being added as a plaintiff and then arguing that it can't assert any claims

15  because it never pursued them administratively.  This cuts in FATIC's favor here.

16      Second, FATIC identifies a number of cases in which, for the purposes of

17  administrative exhaustion, an insured and his insurer stand in essentially the same shoes.

18  That is, an insurer can enter a case later on a claim that was previously exhausted by the

19  insured, and vice versa. *See, e.g.*, *Cummings v. United States*, 704 F.2d 437, 439–40 (9th

20  Cir. 1982); *Hayden v. United States*, 1982 U.S. Dist. LEXIS 11027 (D. Mass. Feb. 26, 1982).

21  The cases FATIC identifies aren't *exactly* on point with this one, for the reasons the FDIC

22  gives, among them that the insurers still filed administrative claims in those cases *and* they

23

24      [1] The Court notes, however, that when Jafari's claim was finally disallowed in October
25  18, 2012, it was identified as being "in the amount of $3,428,937.44." (Doc. No. 46-6.) This
   is somewhat confusing.  At the time that Jafari filed his claim, in May 2012, the FDIC had
   only received and returned the $135,000 and demanded that its loan be repaid in full.  It
26  wasn't until August 2012, after the Court denied his request for a TRO, that FATIC actually
   paid off the loan.   This suggests to the Court that Jafari's initial claim identified
27  $3,649,067.10 as the amount in controversy, or that somewhere along the line the claim was
   adjusted when FATIC paid off the loan. If either is the case, then the Court may be mistaken
28  to follow FATIC's argument that the only difference between the administrative claims and
   the legal claims is the amount sought for unjust enrichment.  (Doc. No. 51 at 10.)

1    were brought under the Federal Tort Claims Act rather than FIRREA. At the same time, the

2    Court can discern little reason for not extending their holdings to this case, other than sheer

3    formalism. The FDIC suggests that the FTCA is "an area of law which promotes different

4    public policies and has developed different equitable principles as compared to FIRREA,

5    which was primarily designed to maintain stability in the savings and loan industry." (Doc.

6    No. 53 at 2.) But it's not clear what this difference, in practice, really amounts to. In what

7    sense would allowing FATIC to pursue claims here undermine "stability" in banking?

8        Third, while the FDIC argues that FIRREA "clearly requires that each creditor file a

9    claim," all of the statutory and case authority it cites to emphasizes the claim itself rather

10    than the party filing it. (Doc. No. 48-1 at 8–10; Doc. No. 53 at 1–2, 4.) That brings the Court

11    back to the question whether FATIC's claims against the FDIC now are the same as those

12    that Jafari previously brought administratively, and the Court finds, over the FDIC's

13    objections, that they are. The FDIC says that "[m]erely joining Jafari's existing lawsuit does

14    not substitute for the claims process," which, even if true, is a mischaracterization of FATIC's

15    true role in this case from the very beginning. (Doc. No. 53 at 4.)

16        For all of the above reasons, the Court rejects the FDIC's opening argument that

17    FATIC's claims must be dismissed because they weren't exhausted administratively. The

18    Court would note, finally, that this issue may be completely insignificant in the big picture.

19    Jafari explains that he added FATIC as a plaintiff just to be cautious, in response to a

20    potential argument from the FDIC that *he* lacked standing, and yet the FDIC's motion to

21    dismiss Jafari's claim doesn't challenge his standing after all. It merely argues that his two

22    equitable claims aren't available against the FDIC as a matter of law.

23    **II.**     **Equitable Claims**

24        When the Court denied Jafari's request for a TRO in the first case that he filed, it did

25    so, in part, on the grounds that FIRREA contains a sweeping anti-injunction provision that

26    limits a court's ability to grant equitable remedies against the FDIC. That provision appears

27    at 12 U.S.C. § 1821(j), and it says:

28            Except as provided in this section, no court may take any action,
             except at the request of the Board of Directors by regulation or

1    order, to restrain or affect the exercise of powers or functions of
2    the Corporation as a conservator or a receiver.

3    The D.C. Circuit, for one, has recognized that § 1821(j) "does indeed effect a sweeping

4    ouster of courts' power to grant equitable remedies." *Freeman v. FDIC*, 56 F.3d 1394, 1399

5    (D.C. Cir. 1995).  The Ninth Circuit has also recognized that "Section 1821(j) prevents courts

6    from granting any equitable relief against the FDIC . . . ."  *Sharpe v. FDIC*, 126 F.3d 1147,

7    1154 (9th Cir. 1997).  *See also Henrichs v. Valley View Development*, 474 F.3d 609, 614

8    (9th Cir. 2007) ("[Section 1821(j)] states that no court may grant equitable relief against the

9    FDIC except as provided by FIRREA.").  This very Court has followed that lead.  *See, e.g.*,

10   *Bennett v. One West Bank*, Case No. 10-CV-1884-BTM-RBB (S.D. Cal. June 23, 2011),

11   Doc. No. 15 at 6 ("[T]he Court concludes that the FDIC, in its capacity as receiver for

12   IndyMac Bank, is entitled to judgment as a matter of law on Plaintiff's remaining claims for

13   equitable relief.").

14          The obvious difference between the above cases and this one is that the equitable

15   claims in the above cases didn't come with a demand for monetary damages.  In *Freeman*,

16   the plaintiffs sought injunctive and declaratory relief to restrain the FDIC from foreclosing on

17   their property.  *Freeman*, 56 F.3d at 1399.  In *Sharpe*, they sought rescission of a settlement

18   agreement and declaratory relief.  *Sharpe*, 126 F.3d at 1155.  In *Henrichs*, they sought

19   declaratory relief. *Henrichs*, 474 F.3d at 614.  And finally, the plaintiff in *Bennett* sought

20   injunctive relief to prevent a foreclosure sale.  *Bennett* at 6.  In this case, by contrast, Jafari

21   just wants to hold the FDIC to its offer to reconvey the deed of trust for $135,000, which

22   implies the return of the $3,649,067.10 paid to the FDIC by FATIC.  Arguably, that makes

23   his claims sound more in law than in equity, although the FDIC hangs on the prayer in

24   Jafari's complaint for, "[a]s to the Third Claim for Relief, a declaration that Jafari is equitably

25   subrogated to the Chevy Chase Note and Deed of Trust, and to all other liens and

26   encumbrances which were paid from Jafari's sale proceeds which were senior to the La Jolla

27   Bank lien and for disgorgement and damages equal to the amounts necessary to satisfy

28   those senior liens in full."  (FAC at 13.)

1          Ultimately, whether § 1821(j) bars Jafari's second and third claims isn't a matter of the

2    labels affixed to them, but rather the actual relief those claims seek and an analysis of

3    whether that relief would affect the FDIC's exercise of its powers.  *See, e.g.*, *Goldstein v.*

4    *FDIC*, 2012 WL 1819284 at 9–15 (D. Maryland May 16, 2012).  This is intuitive, considering

5    that § 1821 doesn't break down the claims that are and aren't prohibited by it, and instead

6    simply prohibits "any action . . . to restrain or affect the exercise of powers or functions of the

7    Corporation as a conservator or a receiver."  12 U.S.C. § 1821(j).  The court in *Goldstein*,

8    recognizing that an unjust enrichment claim has equitable roots, equally recognized that

9    claims are to be characterized by the remedies they seek and that an unjust enrichment

10   claim for *money damages* is legal in nature.  *Goldstein* at *9–10.

11          The FDIC's response to *Goldstein* is that its characterization of the unjust enrichment

12   claim relied on substantive Maryland law, and that substantive California law is different.

13   The Court doesn't find this response persuasive.  First, the court in *Goldstein* didn't rely

14   entirely on Maryland law; it also quoted *Hindes v. FDIC*, 137 F.3d 148, 161 (3d Cir. 1998)

15   for the insight that "Courts uniformly have held that the preclusion of section 1821(j) does

16   not affect a damages claim."  *Goldstein* at *10 n.9.  Other courts have recognized this.  *See,*

17   *e.g.*, *Sharpe*, 126 F.3d at 1155 ("The damages claim is not affected by the jurisdictional bar

18   imposed by § 1821(j) . . . .");  *Volges v. Resolution Trust Corp.*, 32 F.3d 50, 53 (2d Cir. 1994)

19   ("Although § 1821(j) precludes equitable remedies, a plaintiff may still assert a claim for

20   damages against the RTC through the normal claims process.").  Second, to say, as the

21   FDIC does, that "the basis for any monetary recovery by Plaintiffs would stem from a judicial

22   determination that equity required such a result" (Doc. No. 53 at 9) is just to make the point,

23   also made in *Goldstein*, that on some level all legal principles are based in equity because

24   they try to accomplish what is fair and just.  *Goldstein* at *9.  Jafari's unjust enrichment claim

25   is a claim for money damages arising out of a contract—the release agreement/proposal

26   letter—the legitimate terms of which he believes he satisfied. (FAC at 13.)  The Court finds

27   that it is not barred by § 1821(j).

28   //

1    The Court finds the same with respect to the equitable subrogation claim. Even if the

2  claim does sound in equity and seek certain declaratory relief, it is ultimately a claim for

3  money damages that follows on the heels of the FDIC's denial of his administrative claim

4  (and, for what it is worth, will most likely rise or fall with the other two claims the Court is

5  allowing to go forward). The caselaw is very clear that these claims deserve a judicial

6  resolution, and the Court doesn't find that its resolution of the claim will "restrain or affect"

7  the FDIC's functions. *Freeman*, 56 F.3d at 1399 ("In many cases, however, aggrieved

8  parties will have opportunities to seek money damages or other relief through the

9  administrative claims process provided in 12 U.S.C. § 1821(d), and their claims are

10  ultimately subject to judicial review."). *See also Veluchamy v. FDIC*, 706 F.3d 810, 818 (7th

11  Cir. 2013) ("Therefore, where the FDIC as receiver has disallowed a claim pursuant to the

12  administrative process outlined in Section 1821(d) (as happened here), the judicial resolution

13  of that claim expressly permitted by that subsection should not typically run afoul of Section

14  1821(j)."). The Court doesn't find, as the FDIC suggests, that this renders § 1821(j)

15  "toothless" by making "any sort of relief" available. (Doc. No. 53 at 6.) Nor does it find that

16  the equitable subrogation claim is analogous to the constructive trust claim in *Goldstein*,

17  which the court held *was* barred by § 1821(j), because it's not being asserted against the

18  FDIC "as a conservator or receiver." The FDIC performed that role with respect to the loan

19  issued by La Jolla Bank, FATIC ultimately paid off the loan, and Jafari now seeks equitable

20  subrogation  In *Goldstein*, on the other hand, the plaintiff asked the court to impose a

21  constructive trust on property that the FDIC, acting as a receiver, *still held*. *Goldstein* at *13.

22  **V.    Conclusion**

23    For the reasons given above, the FDIC's motion to dismiss is **DENIED.** This case

24  presents the rather straightforward question of whether the FDIC was justified in returning

25  the $135,000 offered by Jafari and refusing to reconvey its deed of trust on his home. The

26  FDIC says it was because certain conditions weren't satisfied. Jafari and FATIC say it was

27  //

28  //

1 │ not because those conditions were unlawful or otherwise illegitimate. This dispute is entitled

2 │ to a full judicial resolution, and the Court doesn't find that the specific claims Jafari and

3 │ FATIC assert run afoul of FIRREA's anti-injunction provision.

4

DATED: April 17, 2014

5

6

*Larry A. Burns*

7 │ **HONORABLE LARRY ALAN BURNS**
United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12cv1971