1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10
11

REZA JAFARI, FIRST AMERICAN TITLE INSURANCE COMPANY, a California Corporation,

Plaintiffs,

vs.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for La Jolla Bank; DOES 1 through 50, inclusive,

Defendants.

12
13
14
15
16
17

CASE NO. 12cv2982-LAB (RBB)

**ORDER DENYING MOTION TO DISMISS AND GRANTING MOTION FOR SUMMARY JUDGMENT**

18
19
20
21
22
23

Reza Jafari and First American Title Insurance Company brought this suit against the Federal Deposit Insurance Corporation (FDIC), in its capacity as receiver (FDIC-R), relating to Jafari's home purchase gone awry.  The FDIC-R has filed a motion to dismiss for lack of jurisdiction or, in the alternative, summary judgment.  (Docket no. 110.)

24

**I.     Factual Background**

25

**A.     La Jolla Bank Loan**

26
27
28

In December 2007 La Jolla Bank made a $2.45 million construction loan to ALB Properties, LLC for construction of a home located at 14747 Roxbury Terrace, Rancho Santa Fe, California.  The loan was secured by a deed of trust and a personal guarantee from ALB's managing member, Birger Bacino.  The deed of trust was a second lien on the

1   property, behind a first deed of trust held by Chevy Chase Bank.

2   **B.    Default and Bankruptcy**

3   In 2009 Bacino began defaulting on loans, including the La Jolla Bank loan.   In

4   December 2009, Bacino and ALB filed separate Chapter 7 bankruptcy petitions.   On

5   February 19, 2010, the Office of Thrift Supervision closed La Jolla Bank and appointed the

6   FDIC as its receiver.

7   **C.    Proposed Short Sale of the Roxbury Terrace Property to Jafari**

8   In September 2011, Jafari entered into an agreement with Bacino to purchase the

9   Roxbury Terrace property for $4.475 million.   The proposed purchase price would not pay

10  off Chevy Chase Bank as the first lienholder (which was owed more than $7.7 million), the

11  FDIC-R (which was owed $3.36 million), or several third parties that had filed mechanic's

12  liens.   Thus, it was a "short sale."

13  **D.    The FDIC-R's September 8, 2011 Letter**

14  The FDIC-R sent a letter addressed to Bacino in connection with the proposed short

15  sale.   The letter confirmed that the FDIC-R would accept $135,000 for the release of its lien

16  on the Roxbury Terrace property, subject to several conditions.   The conditions required:

17      •    Bacino and ALB to sign and return the letter, and thereby acknowledge that the

18           FDIC-R was not waiving its rights against them;

19      •    Bacino and ALB to provide opinion letters from their bankruptcy counsel stating

20           that the FDIC-R's release of the collateral didn't require approval of the

21           bankruptcy court and that the loan agreement and guarantee would remain

22           effective against them in subsequent litigation;

23      •    An October 1, 2011 deadline for the FDIC-R's release of the collateral;

24      •    That the opinion letters and signatures be provided to the FDIC-R prior to the

25           October 1, 2011 deadline; and

26      •    All parties to sign the letter for it to be effective.

27  / / /

28  / / /

12cv2982

It explained "each of the representations, warranties, terms and conditions set forth in this letter are material inducements to the FDIC-R to enter into the agreement evidenced by this Letter."

### E.    September 23, 2011 Closing

While Bacino signed the letter, ALB didn't.  Additionally, Bacino and ALB didn't provide the required opinion letters to the FDIC-R.  Thus, the FDIC-R did not release its lien or reconvey its deed of trust for the Roxbury Terrace property.  Nonetheless, on September 23, 2011, Bacino, Jafari, Heritage Escrow Company, and First American closed the sale, with Heritage serving as the escrow agent and First American issuing title insurance to Jafari.  While First American had received the FDIC-R's letter before the September 23, 2011 closing, it didn't confirm that the letter's requirements had been met.

### F.    Jafari's Administrative Claim and Subsequent Litigation

On September 26, 2011, the FDIC-R's servicing agent received notice of a $135,000 wire from First American.  The FDIC-R rejected the proposed payment, and advised Heritage that the conditions required to release its security interest hadn't yet occurred and, therefore, it wouldn't release the security interest on the property.  All of the other lenders, including Chevy Chase Bank, accepted the tendered funds and reconveyed their liens.  Thus, the FDIC-R's lien was elevated to a first priority position.  On April 2, 2012, the FDIC-R recorded a notice of default on the Roxbury Terrace property.

On May 21, 2012, Jafari submitted a Proof of Claim through the FDIC's administrative process alleging breach of contract, unjust enrichment, rescission, and equitable subrogation.  The FDIC-R disallowed the claim.  On August 1, 2012, the FDIC-R published a notice of sale as to the Roxbury Terrace Property, and Jafari sued to enjoin foreclosure.  On August 27, 2012, after the Court denied Jafari's request for injunctive relief, First American paid the FDIC-R $3,649,067, representing the outstanding balance on ALB's note.

After First American paid off ALB's note, Jafari added First American as a plaintiff and Plaintiffs filed their First Amended Complaint (FAC).  (Docket no. 46.)  The FAC is premised on the FDIC-R's September 8, 2011 letter and contends Jafari is an intended third party

beneficiary of the letter.  The FDIC-R moved to dismiss the FAC, contending that the claims of First American must be dismissed because it hadn't gone through the FDIC's administrative claims process. (Docket no. 48.) The Court denied the motion, explaining that First American and Jafari stand in the same shoes because First American was the force behind Jafari's claims from the beginning of this case and First American's claims against the FDIC-R are the same as those that Jafari previously brought administratively.  (Docket no. 57 at 2–4.)

## II.      Discussion

The FDIC-R contends that the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub. L. No. 101-73, 103 Stat. 183, strips the Court of jurisdiction over Plaintiffs' claims because they failed to fully exhaust their administrative remedies. *See* 12 U.S.C. § 1821(d)(13)(D). It also asks the Court to dismiss Plaintiffs' unjust enrichment and equitable subrogation claims "to the extent that they seek coercive relief beyond damages."  In the alternative, the FDIC-R argues that the Court should enter summary judgment against Jafari and First American.  It argues that Jafari lacks any damages and isn't a real party in interest because First American paid Jafari's alleged loss. It also argues that neither plaintiff has a cognizable action for breach of contract, unjust enrichment, or equitable subrogation—the three claims in the FAC.

### A.      Legal Standard

A party may move to dismiss a claim for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Plaintiffs have the burden of establishing that subject matter jurisdiction is proper.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  As the moving party, the FDIC-R has the burden to demonstrate the absence of a factual issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To meet this burden, it may show that Jafari and First American lack evidence to support their case.  *Id*. / / /

1   at 325.  If it makes this showing, Jafari and First American must go beyond the pleadings and

2   set forth "specific facts" to show a genuine issue for trial.  *Id*. at 324.

3         **B.**       **Motion to Dismiss for Failure to Exhaust of Administrative Remedies**

4         The FDIC-R contends that the Court's order permitting First American to proceed in

5   this case "reveal[s] additional jurisdictional obstacles that the Court has not addressed. . . ."

6   It contends that Jafari's administrative claims didn't exhaust the claims stated in the FAC

7   because the administrative claims were based on future harm from the FDIC-R's refusal to

8   release its lien until ALB's loan balance was paid, while the FAC is based on First American's

9   payment of the loan balance.

10        FIRREA strips courts of jurisdiction over claims that have not been exhausted through

11  this process:

12        Except as otherwise provided in this subsection, no court shall have jurisdiction
    over–

13

14        (i) any claim or action for payment from, or any action seeking a
    determination of rights with respect to, the assets of any depository
    institution for which the [FDIC] has been appointed receiver, including

15  assets which the [FDIC] may acquire from itself as such receiver; or

16        (ii) any claim relating to any act or omission of such institution or the
    [FDIC] as receiver.

17

18  12 U.S.C. § 1821(d)(13)(D).  When determining whether claims have been administratively

19  exhausted, courts look to whether the administratively presented claims provide the FDIC

20  with adequate notice of the claims raised in the lawsuit.  *Brown Leasing Co. v. FDIC*, 833

21  F.Supp. 672, 675 (N.D. Ill. 1993) ("This Court simply finds that the FDIC is entitled to fair

22  notice of the facts and legal theories on which a claimant seeks relief from the failed

23  institution."); *Branch v. FDIC*, 833 F. Supp. 56, 60 (D. Mass. 1993) ("[T]he appropriate

24  question . . . is whether Branch's administrative claims provided the particular FDIC

25  receiverships with adequate notice of the challenged claims and with sufficient information

26  and detail about the claims to enable the FDIC expeditiously and fairly to allow or disallow

27  the claims.").  "FIRREA does not limit the dollar amount of plaintiff's district court claim to that

28  which plaintiff earlier sought in its claim before the FDIC."  *FDIC v. Hickey*, 757 F. Supp. 2d

194, 197 (E.D.N.Y. 2010) (quotation omitted).  Nor does it limit a plaintiff's district court case to the causes of action alleged during the administrative process.  *Telecenter, Inc. v. FDIC ex rel. First Commercial Bank of Tampa Bay*, 2015 WL 403186, at *6 (M.D. Fla. Jan. 28, 2015).

The Court finds that Jafari's administrative claims provided sufficient notice of the claims presented in the FAC.  Indeed, the Court has already found that First American's "claims against the FDIC now are the same as those that Jafari previously brought administratively." (Docket no. 57 at 4.)  They involve the same factual predicate and include the same causes of action.  The only additional fact in the FAC is that First American has now paid off the FDIC-R.  But payment couldn't have come as a surprise to the FDIC-R—it's precisely what the FDIC-R demanded of Plaintiffs.  As Jafari explained in his Proof of Claim, "the FDIC-R is demanding over $3 million as the price for a reconveyance."  First American's payment was the natural consequence of this demand.  *See, e.g, Premier Tierra Holdings, Inc. v. Ticor Title Ins. Co. of Florida*, 2011 WL 2313206, at *3 (S.D. Tex. June 9, 2011) (If a title defect is discovered, the title insurer "may pay the insured the full policy amount, take affirmative action to clear the defect, or . . . purchase the indebtedness secured by the insured mortgage.").  The FDIC-R's motion to dismiss for failure to exhaust is **DENIED**.

### C.    Motion to Dismiss Claims for Equitable Relief

FIRREA "prevents courts from granting any equitable relief against the FDIC." *Sharpe v. FDIC*, 126 F.3d 1147, 1154 (9th Cir. 1997); 12 U.S.C. § 1821(j).  Based on this provision, the FDIC-R moves to dismiss Plaintiffs' second and third causes of action for unjust enrichment and equitable subrogation "insofar as these requests exceed the 'claim for money damages.'"  The Court has already found that the unjust enrichment and equitable subrogation claims are ultimately claims for money damages.  (Docket no. 57 at 6–8.)  The FDIC-Rs motion to dismiss under § 1821(j) is **DENIED**.

### D.    Motion for Summary Judgment on Jafari's Claims

According to the FAC, First American "paid the FDIC the entire amount owed on the La Jolla Bank Note" and two days later "the FDIC executed and delivered a full reconveyance

of the La Jolla Bank Deed of Trust." (Docket no. 46, ¶ 32.) Based on this allegation, the FDIC-R moves for summary judgment on all of Jafari's claims, arguing that he has no damages and is not a real party in interest. In response, Plaintiffs argue that: (1) Jafari has been damaged because First American's payment to the FDIC-R depleted Jafari's policy limits; (2) an unjust enrichment claim need not be brought by the party who incurred the loss; and (3) the FDIC-R waived its real party in interest objection by not raising it earlier.

If the insurer has paid the entire loss suffered by the insured, it is the only real party in interest and must sue in its own name. *United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 380–81 (1949). In that case, the district court should dismiss the insured, because it is no longer a real party in interest. *See Hilbrands v. Far E. Trading Co.*, 509 F.2d 1321, 1322 (9th Cir. 1975) ("Since Guam Maintenance's insurer paid the entire loss suffered by that employer, Guam Maintenance had no interest in the action. The district court correctly dismissed the employer as substituted plaintiff and we affirm as to this dismissal."). "If [the insurer] has paid only part of the loss, both the insured and insurer . . . have substantive rights against the tortfeasor which qualify them as real parties in interest." *Aetna*, 338 U.S. at 381.

Because it's undisputed that First American paid the entire amount owed on the La Jolla Bank note, Jafari isn't a real party in interest. The Court finds no support for Plaintiffs' diminution of policy limits argument, and Plaintiffs cite to none. Indeed, the real party in interest rule articulated in *Aetna* would be eviscerated if a decrease in policy limits was sufficient to make an insured a real party in interest, even though their loss had been paid in full.

Plaintiffs' argument that an unjust enrichment claim can be brought by a party that hasn't incurred a loss also lacks merit. A claim based on unjust enrichment requires "receipt of a benefit and the unjust retention of the benefit at the expense of another." *Kelleher v. Kelleher*, 2014 WL 94197, at *7 (N.D. Cal. 2014) (quotation omitted). The plaintiff must have suffered the injury to maintain an unjust enrichment claim. *Pelletier v. Pac. WebWorks, Inc.*, 2010 WL 4924995, at *1 & n.3 (E.D. Cal. Nov. 29, 2010); *see also Bykov v. Radisson Hotels*

1  *Int'l, Inc.*, 2006 WL 752942, at *6 (D. Minn. Mar. 22, 2006) (dismissing unjust enrichment

2  claim because plaintiff hadn't suffered a loss).

3       While Plaintiffs are correct that real party in interest objections must be raised with

4  "reasonable promptness" and can be waived, "courts have generally only found waivers

5  where the objections were raised during pretrial proceedings or on the eve of trial." *In re*

6  *Vitamins Antitrust Litig.*, 2001 WL 755852, at *3 n.5 (D.D.C. June 7, 2001) (collecting cases).

7  The FDIC-R hasn't waived this objection.

8       The FDIC-R's motion for summary judgment on Jafari's claims is **GRANTED**.

9       **E.**    **Motion for Summary Judgment on Breach of Contract Claim**

10       Plaintiffs' breach of contract claim is premised on the FDIC-R's September 8, 2011

11  letter.  They contend that, pursuant to the letter, the FDIC-R is obligated to release its lien

12  on the Roxbury Terrace property in exchange for $135,000.  They dismiss the remainder of

13  the conditions in the letter as immaterial, arguing that their nonperformance doesn't excuse

14  the FDIC-R's alleged obligation under the letter.  The FDIC-R contends Plaintiffs have no

15  cognizable breach of contract claim because: (1) Plaintiffs are third parties to the letter with

16  no right to enforce its terms; (2) ALB never signed the letter, so the FDIC-R's obligations

17  under the letter never arose; and (3) ALB and Bacino never provided the attorney opinion

18  letters, and therefore never exercised the option in the letter.

19       **1.**    **Jafari and First American as Third Party Beneficiaries**

20       Plaintiffs argue that the FDIC-R knew Bacino was contractually obligated to Jafari to

21  deliver title free and clear of all existing liens and the letter was intended to enable Bacino

22  to fulfill this contractual obligation.  They contend "Jafari was not merely an intended

23  beneficiary of the Release Letter, he was a reason the contract was conceived, drafted and

24  entered."  According to Plaintiffs, this shows Jafari was an intended third party beneficiary

25  of the letter, and can therefore sue to enforce its terms.

26       "[O]nly a party to a contract or an intended third-party beneficiary may sue to enforce

27  the terms of a contract or obtain an appropriate remedy for breach." *GECCMC 2005-C1*

28  *Plummer St. Office Ltd. P'ship v. JPMorgan Chase Bank, Nat. Ass'n*, 671 F.3d 1027, 1033

(9th Cir. 2012).  When a government contract is at issue, plaintiffs must overcome a presumption that nonparties who benefit from the contract are incidental, rather than intended, beneficiaries.  *Id.* at 1033–34.  Intended third party beneficiary status isn't established by "a contract's recitation of interested constituencies, vague hortatory pronouncements, statements of purpose, explicit reference[s] to a third party, or even a showing that the contract operates to the third parties' benefit and was entered into with them in mind." *Id*. at 1033 (citations, brackets, and quotations omitted).  Instead, the language of the contract must show "a clear intent to rebut the presumption that the third parties are merely incidental beneficiaries." *Id.* at 1033–34 (brackets omitted).

Here, the language of the letter indicates that the parties intended to foreclose claims by non-signatories.  The letter states that it "shall inure to the benefit of and bind the successors, assigns, heirs, executors, and administrators of the parties."  This language evinces an intent to limit intended beneficiaries to the contracting parties.  *See Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1212 (9th Cir. 1999) (finding language stating, "This contract binds and inures to the benefit of the parties hereto, their successors and assigns. . ." indicated "the intent of the parties to limit intended beneficiaries to the contracting parties").  Thus, while there may have been "an intention to benefit a third party," Plaintiffs can't show "an intention that the third party should have the right to enforce that intention." *Astra USA, Inc. v. Santa Clara Cnty.*, 131 S. Ct. 1342, 1348 (2011) (quoting 9 J. Murray, Corbin on Contracts § 45.6, p. 92 (rev. ed. 2007)).  Plaintiffs have failed to overcome the presumption that Jafari is an incidental rather than intended beneficiary to the FDIC-R's letter.

## 2.    Execution of the FDIC-R's Letter

The FDIC-R's letter states "[t]his letter shall not be binding upon, or effective against, any party signing a counterpart unless and until all parties have signed counterparts."  It's undisputed that ALB never signed the letter.  (Docket no. 119, ¶ 10.)  "In the context of the document as a whole . . . [it's] difficult to conclude that the quoted sentence means anything other than what it plainly says: that the agreement is not binding until all parties have signed."

*PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 339 F. App'x 693, 694 (9th Cir. 2009) (finding no contract had been formed where the relevant document stated "[t]his Agreement shall become binding when one or more counterparts hereof, individually or taken together, shall bear the signatures of all of the parties reflected hereon as signatories," but some parties didn't sign).  As a result, just as in *PSM Holding*, the letter never became a binding contract.

### 3.    Opinion Letters from Counsel

The FDIC-R's letter made clear that the FDIC-R's agreement was "subject to" several unperformed conditions.  Before the FDIC-R was required to release its lien on the Roxbury Terrace property, ALB and Bacino were each required to provide opinion letters from their counsel.  The letter explained:

> The release of collateral must occur on or before October 1, 2011 (the "Release Date"). . . .  Should the release of collateral not occur prior to the expiration of the Release Date, all of the terms, conditions, and provisions of this letter shall expire. . . .  The letters from counsel for Borrower and Guarantor must be received, reviewed and approved, in the sole and absolute discretion of the FDIC-R, prior to the Release Date.  Borrower and Guarantor are encouraged to provide the letters well in advance of the Release Date, as it will take the FDIC-R time to process and evaluate the letters.

Thus, ALB and Bacino were required to provide the attorney opinion letters before October 1, 2011, and if they didn't, the terms of the letter would expire.

The FDIC-R contends that these conditions created an unexercised and now-expired unilateral option contract.  An option is a contract to keep a separate contract offer open for a prescribed period.  1 Witkin, Summary of Cal. Law (10th ed. 2005), Contracts § 168, p. 33.  The letter isn't a promise to keep a separate offer open.  It's an offer to enter into a bilateral contract with conditions precedent to the FDIC-R's performance obligations.  *Cf. Lowe v. Massachusetts Mut. Life Ins. Co.*, 54 Cal. App. 3d 718, 729 (Ct. App. 1976) ("There is a presumption in favor of interpreting ambiguous agreements to be bilateral rather than unilateral.").

While the letter isn't an option, the unfulfilled conditions in the letter can still foreclose Plaintiffs' breach of contract claim. "Under the law of contracts, parties may expressly agree that a right or duty is conditional upon the occurrence or nonoccurrence of an act or event."

- 10 -

12cv2982

1   *Platt Pacific, Inc. v. Andelson*, 6 Cal.4th 307, 313 (1993).  "'Subject to' is generally construed
2   to impose a condition precedent."  *Rubin v. Fuchs*, 1 Cal. 3d 50, 54, 459 P.2d 925, 928
3   (1969).  If a condition precedent "is not fulfilled, the right to enforce the contract does not
4   evolve."  *Kadner v. Shields*, 20 Cal.App.3d 251, 258 (1971).  The "nonoccurrence of a
5   condition precedent may be excused for a number of legally recognized reasons."  *Platt*
6   *Pacific*, 6 Cal.4th at 314.

7       Plaintiffs contend the opinion letter provisions are immaterial and, therefore, didn't
8   excuse the FDIC-R's performance.  They also contend that the Court should excuse the
9   non-occurrence of the opinion letter provision to avoid forfeiture, which also turns on the
10  materiality of the provision.  Restatement (Second) of Contracts § 229 (1981) ("To the extent
11  that the non-occurrence of a condition would cause disproportionate forfeiture, a court may
12  excuse the non-occurrence of that condition unless its occurrence was a material part of the
13  agreed exchange.");  *Hammes Co. Healthcare, LLC v. Tri-City Healthcare Dist.*, 2011 WL
14  6182423, at *9 (S.D. Cal. Dec. 13, 2011).  But the letter states that "[e]ach of the
15  undersigned acknowledge that each of the representations, warranties, terms and conditions
16  set forth in this letter are material inducements to the FDIC-R to enter into the
17  agreement. . . ."  And, "[t]he facts recited in a written instrument are conclusively presumed
18  to be true as between the parties thereto, or their successors in interest. . . ."  Cal. Evid.
19  Code § 622; Fed. R. Evid. 302.  Plaintiffs cannot now dispute the materiality of the opinion
20  letters requirement because, even if the letter were a binding contract, and even if Plaintiffs
21  were third party beneficiaries to the contract, third party beneficiaries have "no greater rights"
22  under a contract than the contracting parties.  *Hollister v. Benzl*, 71 Cal. App. 4th 582, 586,
23  83 Cal. Rptr. 2d 903 (1999).

24      For each of these reasons, the FDIC-R's motion for summary judgment on Plaintiffs'
25  breach of contract claim is **GRANTED**.

26  / / /

27  / / /

28

**F.     Motion for Summary Judgment on Unjust Enrichment Claim**

The FDIC-R seeks summary judgment on Plaintiffs' unjust enrichment claim because: (1) it's inconsistent with their breach of contract cause of action, and (2) Plaintiffs can't show unjust enrichment.

**1.     Inconsistency with Breach of Contract Action**

The FDIC-R argues that Plaintiffs' unjust enrichment claim should be dismissed because they also assert a breach of contract action and "unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Solano v. America's Servicing Co.*, 2011 WL 4500874, at *9 (E.D. Cal. Sept. 27, 2011).  However, "even though a plaintiff may not ultimately prevail under both unjust enrichment and breach of contract, it may plead both in the alternative." *Weingand v. Harland Fin. Solutions, Inc.*, 2012 WL 3763640, at *4 (N.D. Cal. Aug. 29, 2012).  Plaintiffs affirm that they make these claims in the alternative and are not seeking to recover on both claims.  Thus, the breach of contract allegations in the FAC don't preclude Plaintiffs' unjust enrichment cause of action.

**2.     Plaintiffs' Evidence of Unjust Enrichment**

A "common law claim for unjust enrichment is an action for restitution" which "applies where a plaintiff has no enforceable contract but nonetheless confers a benefit on the defendant that the defendant has knowingly accepted under circumstances, making it inequitable for the defendant to retain the benefit without paying for its value." *Chasnik v. Bank of Am. Home Loans Servicing LP*, 2011 U.S. Dist. LEXIS 156743 (C.D. Cal. Oct. 26, 2011).  "To the extent a claim for unjust enrichment is available, it generally requires proof of receipt of a benefit and unjust retention of the benefit at the expense of another." *Kelleher v. Kelleher*, 2014 WL 94197, at *7 (N.D. Cal. 2014) (quotation omitted).  "The benefits must generally be conferred by mistake, fraud, coercion, or request; otherwise, though there is enrichment, it is not unjust." *Id.* (quotation omitted).  "Benefits, such as payment of money or transfer of property, conferred under duress, undue influence, or any other form of / / /

1    coercion, may ordinarily be recovered in a quasi-contract action." 1 Witkin, Summary of Cal.

2    Law (10th ed. 2005), Contracts § 1030, p. 1121.

3        Plaintiffs contend that the FDIC-R coerced payment by threatening to foreclose on the

4    Roxbury Terrace property unless the La Jolla Bank loan was paid in full.  However, "[a]

5    person who has conferred a benefit upon another in response to the institution or threat of

6    civil proceedings against him by the other . . . is not entitled to restitution merely because the

7    other has begun or threatened to begin civil proceedings against him."  Restatement (First)

8    of Restitution § 71 (1937).  Plaintiffs have offered no evidence to indicate that the FDIC-R

9    acted wrongfully in threatening foreclosure.  They don't dispute that the FDIC-R had a valid

10   lien securing the property.  The FDIC-R had no obligation to release the lien without full

11   payment, and the unexecuted contract offer made to Bacino and ALB doesn't change that.

12   Nor does Chevy Chase Bank's separate decision to settle its first priority lien.  If anything,

13   First American's loss is due to its own negligence.  First American could have avoided its loss

14   by declining to issue title insurance to Jafari until the requirements listed in the FDIC-R's

15   letter were met.

16       [I]t is difficult to think of a situation in which a title insurance company could not
         claim unjust enrichment as to someone who might inadvertently benefit by their
17       negligence.  Either they insure or they don't.  It is not the province of the court
         to relieve a title insurance company of its contractual obligation.
18

19   *Coy v. Raabe*, 69 Wash. 2d 346, 351, 418 P.2d 728, 731 (1966).  The FDIC-R's receipt and

20   retention of First American's payment is not unjust.  Its motion for summary judgment on

21   Plaintiffs' unjust enrichment claim is **GRANTED**.

22       **G.    Motion for Summary Judgment on Equitable Subrogation Claim**

23       The FDIC-R also moves for summary judgment on Plaintiffs' equitable subrogation

24   claim.  Equitable subrogation is appropriate where:

25       (1) Payment [was] made by the subrogee to protect his own interest. (2) The
         subrogee [has] not . . . acted as a volunteer. (3) The debt paid [was] one for
26       which the subrogee was not primarily liable. (4) The entire debt [has] been
         paid. (5) Subrogation [would] not work any injustice to the rights of others.
27

28   / / /

1   *Han v. United States*, 944 F.2d 526, 529 (9th Cir. 1991) (quoting *Caito v. United California*

2   *Bank*, 20 Cal.3d 694, 704 (1978)).  "Equitable subrogation is a broad equitable remedy, not

3   limited to circumstances where these five factors are met, but is appropriate whenever one

4   person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily

5   liable, and which in equity and good conscience should have been discharged by the latter."

6   *Id*. (quotation omitted).  However, equitable subrogation is denied to a party who has actual

7   knowledge of an existing encumbrance. *Id*.; *Smith v. State Sav. & Loan Assn.*, 175 Cal. App.

8   3d 1092, 1098 (Ct. App. 1985).  "[T]he type of notice that will defeat equitable subrogation

9   should be such as to suggest the person seeking relief knowingly or with something

10   approaching gross recklessness disregarded information and seeks to capitalize on his own

11   ignorance to the detriment of an innocent third party." *Bedrock Fin., Inc. v. United States*,

12   2012 WL 5499403, at *5 (E.D. Cal. Nov. 13, 2012) (vacated on other grounds).

13        It's undisputed that Plaintiffs knew of the FDIC-R's security interest in the Roxbury

14   Terrace property before closing.  (Docket no. 119, ¶¶ 14–15.)  Thus, they had "actual

15   knowledge of" the FDIC-R's "existing encumbrance." *Han*, 944 F.2d at 529 (citing *Smith*, 175

16   Cal. App. 3d at 1098). It's also undisputed that First American received copy of the FDIC-R's

17   letter before closing, but nevertheless issued title insurance to Jafari.  (*Id*., ¶ 16.)  Thus, it

18   knowingly disregarded the FDIC-R's security interest, and now seeks to force the FDIC-R to

19   accept partial performance of its unaccepted offer.  Equitable subrogation is not available to

20   Plaintiffs.  The FDIC-R's motion for summary judgment on Plaintiffs' equitable subrogation

21   claim is **GRANTED**.

22   **III.**    **Conclusion**

23        The FDIC-R's motion to dismiss is **DENIED** and its motion for summary judgment is

24   **GRANTED**.

25        **IT IS SO ORDERED**.

26   DATED:  June 8, 2015

27                            **Honorable Larry Alan Burns**
UnitedStatesDistrictCourt

28